UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Wayne County,

    Plaintiff,

v.                                                    Case No. 13-13623

James A. Richter and Michigan          Sean F. Cox
Technology Commercialization Corporation,   United States District Court Judge

    Defendants.
_____/

**OPINION & ORDER
GRANTING DEFENDANT RICHTER'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

        This matter stems from an unsuccessful business venture between Plaintiff Wayne County and Defendant Michigan Technology Commercialization Corporation d/b/a MRI ("MRI"). The County has also sued MRI's President, James Richter ("Richter"). The matter is currently before the Court on Defendant Richter's Motion for Judgment on the Pleadings. The parties have briefed the issues and the Court held a hearing on August 28, 2014. For the reasons set forth below, the Court shall GRANT the motion and dismiss the claims asserted against Richter.

**BACKGROUND**

        The County filed this action, based upon federal-question jurisdiction, on August 22, 2013, asserting the following claims against Defendants MRI and Richter: "Breach of Contract" (Count I); "Interference With A Business Relationship" (Count II); "Indemnification" (Count III); "Unjust Enrichment" (Count IV); "Violation Of The Department Of Housing And Urban

1

Development (HUD) Regulations" (Count V); and "Violation Of False Claims Act" (Count VI).

Defendant MRI asserts the following two counterclaims against the County: "Breach Of Contract" (Count I) and "Tortious Interference with Business Expectancy" (Count II).

Under the current Scheduling Order (Docket Entry No. 9) discovery closed on April 22, 2014, and the deadline for filing motions was May 22, 2014.  The parties later stipulated to extending discovery for 90 days (*see* Docket Entry No. 31) but the Court did not extend the motion deadline.

On April 16, 2014, Defendant Richter filed a timely Motion for Judgment on the Pleadings.  (Docket Entry No. 30).  Defendant Richter's Motion for Judgment on the Pleadings is brought pursuant to Fed. R. Civ. P. 12(c).

Motions for judgment on the pleading pursuant to Fed. R. Civ. P. 12(c) are analyzed under the same standard as motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, (6th Cir. 2012).  When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded factual allegations as true. *Evans-Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1948 (2009).  Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Ashcroft*, 556

U.S. at 678. When a court is presented with a Rule 12(b)(6) motion, it may consider exhibits attached to a defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims therein. *Devlin v. Kalm*, __Fed. App'x __, 2013 WL 4265757 (6th Cir. 2013).

Because this is a Motion for Judgment on the Pleadings, the Court looks to the allegations in the County's Complaint, and attachments to it.

Notably, Defendant Richter is mentioned by name in only three paragraphs of the County's Complaint: 1) paragraph 3, that alleges that Richter is the President of MRI; 2) paragraph 7, that alleges that Richter was involved in discussions regarding use of the funds; and 3) paragraph 13, that alleges Richter was appointed Secretary/Treasurer of MCRM. The vast majority of the general averments are as to Defendant MRI.

The County's Complaint alleges as follows as its general averments. MRI "is a Michigan non-profit corporation." (Compl. at ¶ 2). Richter is the President of MRI.

"In 2009 the County was awarded grant funds from the Community Development Block Grant (hereinafter 'CDBG-R') allocated from the American Recovery and Reinvestment Act of 2009." (Compl. at ¶ 6). "In 2009/2010 discussions were held between the County, James Richter and H. David Hume, president of the Michigan Center for Regenerative Medicine (hereinafter 'MCRM') regarding the use of these funds for the furtherance of a magnet facility for emerging small companies to conduct stem cell research." (Compl. at ¶ 7). A subrecipient contract was entered into between the County and MRI for the purchase and renovation of such a facility. (Compl. at ¶ 8). That contract is attached to the County's Complaint as Exhibit A. A revised plan was approved by HUD in July 2010 and agreed to by MRI. (Compl. at ¶ 9).

In July 2010, MRI purchased a building located at 14875 Galleon Court in Plymouth, Michigan for $655,700.00. (Compl. at ¶ 10). That purchase price was reimbursed to MRI by the County on July 20, 2010. (Compl. at ¶ 11; *see also* Ex. B to Compl.). In addition to the purchase price, the County also paid MRI $77.549.17 for administrative costs and fees. (Compl. at ¶ 12; *see also* Ex. C to Compl.).

"In an effort to further the objectives of the grant, MRI agreed to transfer ownership and reassign the sub-recipient contract to MCRM. This agreement was memorialized in the minutes of the June 25, 2010 Board meeting of MCRM during which Defendant James Richter was appointed Secretary/Treasurer of MCRM." (Compl. at ¶ 13; *see also* Ex. D to Compl.).

The County alleges, however, that "MRI refused to transfer ownership of the building or assign the sub-recipient contract to MCRM." (Compl. at ¶ 14). In August of 2011, the County advised MRI that it was considered in breach of the sub-recipient agreement, as well as the agreement to transfer ownership of the building. (Compl. at ¶ 15).

In December of 2011, HUD advised the County of the need for a second revised plan for the use of the grant funds, focusing more on job creation within a certain population. (Compl. at ¶ 16). In response, in 2012 a revised Substantial Amendment and a Request for an Extension was submitted to the federal government by the County. (Compl. at ¶ 17). MRI advised the County that the Substantial Amendment was feasible. (Compl. at ¶ 18).

"The revised Substantial Amendment and Request for Extension was approved by HUD. The County was to show progress in meeting the new objectives of the Substantial Amendment by September 30, 2012. This date was subsequently extended by HUD to December 30, 2012. If progress was not shown the County risked the loss of the funds." (Compl. at ¶ 19).

MRI was instructed by the County that, under the agreement, tenants for the building were critical to showing progress in meeting the objectives of the Substantial Amendment." (Compl. at ¶ 20). Due to MRI's failure to secure a tenant in a timely manner, the County attempted to do so itself. (Compl. at ¶ 21). But then, "without notice to the County or HUD, on December 27, 2012, MRI sold the building to Resilient Holding, LLC." (Compl. at ¶ 22). On January 2, 2013, MRI advised the County that the building was not available for use. (Compl. at ¶ 23; Ex. E to Compl.). "Since the County was unable to secure a tenant and therefore, unable to meet the objectives of the grant, the County has been directed by HUD to reimburse it the grant funds in the amount of $733,249.17." (Compl. at ¶ 24).

## ANALYSIS

In his motion, Defendant Richter asks the Court to dismiss all claims asserted against him. In responding to the motion, the County now concedes that Counts I (Breach of Contract) and III (Indemnification) may only be asserted against MRI and not Richter. The County also agrees that Count VI should be dismissed, as moot, as to both Defendants. That leaves only Richter's challenges to Count II (Interference With A Business Relationship), Count IV (Unjust Enrichment), and Count V (Violation Of HUD Regulations) for the Court's consideration.

**I.     Count II: Interference With A Business Relationship**

In Count II, the county asserts a tortious interference with business relationship claim against both MRI and Richter.

Under Michigan law, the elements of tortious interference with a business relationship or expectancy are: 1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract; 2) knowledge of the relationship or

5

expectancy on the part of the defendant interferer; 3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and 4) resulting damage to the party whose relationship or expectancy was disrupted. *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc*., 268 Mich. App. 83, 90 (2005).

Defendant Richter contends that Count II fails to state a claim against him for several reasons, including that: 1) the alleged interference was conduct by MRI, not Richter; 2) the Complaint does not allege that Richter performed a *per se* wrongful act or that he acted with malice and without justification; 3) the Complaint fails to allege facts to support a claim against Richter as a corporate officer because it does not allege that he acted solely for his personal benefit instead of the company's behalf; and 4) it does not allege that HUD terminated its "business relationship" with the County as a result of the alleged interference.

This Court agrees that the Complaint fails to state a claim against Richter for tortious interference with business relationship or expectancy. The Court need not reach all of Richter's arguments as to this Count.

The most basic reason to dismiss this count as to Richter is that the tortious interference count is premised entirely on actions allegedly taken by MRI – not Richter. Count II alleges that Defendant MRI failed to make the building available to tenants, abandoned the project, and refused to transfer ownership of the building, and that those actions "interfered with the business relationship between Plaintiff and the federal government." (Compl. at 6). Thus, the Count is based upon actions taken by MRI and there are no alleged wrongful actions taken by Richter.

Moreover, even if there were some actions alleged to have been taken by Richer, the Complaint does not allege that Richter acted solely for his own benefit and with no benefit to

6

MRI.  It is "settled law that corporate agents are not liable for tortious interference" "unless they acted solely for their own benefit with no benefit to the corporation." *Reed v. Michigan Metro Girl Scout Council*, 201 Mich. App. 10, 13 (1993).  Because the Complaint does not allege that Richter, MRI's president, acted solely for his own benefit and with no benefit to MRI, it fails to state a claim against Richter under Michigan law.  *Id*.

Indeed, even if the County had included conclusory allegations to that effect, that would still be insufficient because the Complaint also fails to allege any personal benefit to Richter.  *See Springs v. U.S. Dep't of Treasury*, __ F. App'x. __, 2014 WL 2566102 (6th Cir. 2014)

In other words, in order to allege a viable tortious interference claim against Richter, the Complaint would have to both: 1) allege that Richter acted solely for his own benefit with no benefit to MRI; and 2) include factual allegations supporting that legal conclusion.  But the County's Complaint does neither.

Accordingly, the Court shall dismiss this claim against Defendant Richter.

## II.     Count IV:  Unjust Enrichment

Under Michigan law, "[t]o establish a claim of unjust enrichment, the plaintiff must show 1) the 'receipt of a benefit by the defendant from the plaintiff,' and 2) that 'it is inequitable that the defendant retain' the benefit.'"  *C.T. Charlton & Assocs., Inc. v. Thule, Inc*., 541 F. App'x. 549, 555 (6th Cir. 2013) (quoting *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521 (1991)).

Defendant Richter asserts that he is entitled to judgment on the pleadings as to the County's unjust enrichment claim because the Complaint "does not offer any explanation as to how Richter personally received a benefit from the sale, which is a required element of an unjust enrichment claim.  Plaintiff's unjust enrichment claim against Richter is nothing more than a

7

threadbare recital of the elements of a cause of action, supported by mere conclusory statements, which is not sufficient to state a claim against him." (Def.'s Br. at 11).

The Court again agrees with Richter. The County's Unjust Enrichment Count, found at pages 7-8 of the Complaint, alleges as follows:

> 51. That on July 20, 2010 the Plaintiff reimbursed *the Defendant* $655,700 for the cost incurred in the purchasing of the property located at 14875 Galleon Court, Plymouth, Michigan.
> 52. That on May 11, 2011 Plaintiff reimbursed *Defendant* $77,549.17, its costs associated with the purchase and renovation of that facility.
> 53. That the Defendant refuses to transfer ownership of the property to the designated entity.
> 54. That Defendant has retained ownership of the property to the exclusion of Plaintiff and/or its designees.
> 55. That *Defendant* sold the facility on December 28, 2012 to Resilient Holdings, LLC for an amount of $750,000.00. *Defendant* has retained the funds from this sale.
> 56. The *Defendants* will be unjustly enriched if allowed to retain the proceeds from the sale of the facility.
> 57. That Plaintiff will continue to be harmed if Defendants are allowed to retain the proceeds from the sale of the facility.

(Compl. ¶¶ 51-57) (emphasis added). Thus, the Complaint alleges that one Defendant – Defendant MRI – was reimbursed for the purchase price and administrative costs/expenses, and that MRI sold the building and retained the proceeds. (Compl. at ¶¶ 11-12 & 22). Then the Complaint then makes the leap, with no allegations that explanation how or why, that both MRI *and Richter* will be unjustly enriched.

In its Response Brief, the County asserts that "Contrary to Defendant's assertions, Plaintiff *pled facts* that rather precisely satisfy these elements, specifically that he received the payroll checks documented in Exhibit C of the Complaint." (Pl.'s Br.) (emphasis added). But there are no such allegations in the Complaint. The County directs the Court to paragraph 12 of its Complaint but that paragraph merely alleges that "[i]n addition to the purchase price of the

facility, the County *paid MRI* $77,549.17 on May 11, 2011 in administrative costs and fees" and then cites to Exhibit C. Thus, the Complaint itself makes no allegations regarding Richter having received payroll checks, and no allegations regarding whether or not he performed the work for those checks. Moreover, even looking at Exhibit C does not help the County. That Exhibit appears to contain documentation that was submitted by MRI with its request for payment of the administrative costs and expenses. It contains an Affidavit signed by Richter that states that MRI is seeking reimbursement for services actually rendered and that all services have been actually performed.

The Court shall dismiss the County's unjust enrichment claim against Richter because the Complaint fails to state an unjust enrichment claim against Richter under Michigan law.

## III. Count V: Violation Of HUD Regulations

Count V of the County's Complaint, that alleges a violation of HUD regulations, alleges as follows:

> 59. That 24 CFR 84.37 requires any real property acquired with federal funds be held in trust by the recipient for the beneficiaries of the program under which the property was acquired.
> 60. The beneficiaries of the program are the low- to moderate- income persons of the County who were to be recipients of the jobs created under the program.
> 61. That the County has an interest, on behalf of the beneficiaries, in assuring that *the Defendant, as sub-recipient*, complies with the terms of the grant to ensure it is not in breach.
> 62. That 24 CFR 84.32 required *Defendant* to use the facility for the authorized purposes under the grant, and not encumber the property without permission.
> 63. *The Defendant* violated the HUD regulations, specifically 24 CFR 84.37 and 24 CFR 84.23 by the following:
>     a. selling the building in violation of provision 7.01,
>     b. failing to make the building available to lessors who would meet the requirement of the grant; and
>     c. failing to transfer ownership of the building to an entity that would

9

            ensure the grant requirements were met.

(Compl. at 8-9) (emphasis added).

Richter claims this count should be dismissed as against him because it "fails to allege sufficient factual matter to state a claim for relief against Richter individually that is plausible on its face and which allows the Court to draw a reasonable inference that Richter is personally liable to the County for the alleged violation of the HUD regulations." (Def.'s Br. at 13).

The Court agrees that Count V fails to state a claim against Defendant Richter.

First, as pleaded by the County, the Complaint asserts this Count against a single Defendant – the "sub-recipient" of the contract at issue – which the Complaint itself identifies as MRI. (Compl. at ¶¶ 8 & 61). Moreover, the Complaint alleges that "the Defendant" violated the HUD regulations by selling the building, failing to make it available to certain lessors, and failing to transfer ownership – all things that the Complaint alleges that MRI (and not Richter) did. (Compl. at 14 & 15 20-23). Thus, as pleaded, Count V does not assert a claim against Richter.

Second, the HUD statutes referenced in the County's Complaint do not appear to provide for a private cause of action against Richter, who was not a direct recipient of the federal funds. The first HUD statute referenced in the Complaint, 24 CFR 84.32 governs "requirements for recipients concerning the use and disposition of real property acquired in whole or in part under awards" and provides that the "recipient may be directed to transfer title to the property to the Federal Government or to an eligible their party" under certain circumstances. 24 CFR 82.32. The term "recipient" is defined in the HUD regulations as follows:

> *Recipient means an organization receiving financial assistance directly from HUD to carry out a project or program. The term includes* public and private

> institutions of higher education, public and private hospitals, and other *quasi-public and private non-profit organizations such as, but not limited to, community action agencies, research institutes, educational associations, and health centers. The term includes commercial organizations*, international organizations when operating domestically (such as agencies of the United Nations) *which are recipients, subrecipients*, or contractors or subcontractors of recipients or subrecipients. The term does not include government-owned contractor-operated facilities or research centers providing continued support for mission-oriented, large-scale programs that are government-owned or controlled, or are designated as federally-funded research and development centers. The term does not include mortgagors that receive mortgages insured or held by HUD or mortgagors or project owners that receive capital advances from HUD under the Section 202 and 811 programs.

24 CFR §84.2 (emphasis added).

Moreover, the written contract at issue in this case defines the "recipient" as Wayne County and the "subrecipient" as "Michigan Research Institute, a non-profit organization that the County has awarded CDBG-R funds to perform eligible activities under CDBG-R Program." (Agreement at page 3).

Accordingly, the Court concludes that Count V fails to state a claim against Defendant Richter.

## **CONCLUSION & ORDER**

As Plaintiff's Counsel stated on the record on August 28, 2014, the County agrees that: 1) Counts I and III of its Complaint may only be asserted against Defendant MRI; and 2) Count VI is now moot and should therefore be dismissed as to both MRI and Richter. Accordingly, the Court ORDERS that Counts I and III are DISMISSED as to Defendant Richter only and Count VI is DISMISSED as to both Richter and MRI.

IT IS FURTHER ORDERED that Richter's Motion to Dismiss is GRANTED to the

extent that the Court hereby DISMISSES Counts II, IV, and V as to Defendant Richter only.

                                S/Sean F. Cox  
                                Sean F. Cox  
                                United States District Judge

Dated:  September 3, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 3, 2014, by electronic and/or ordinary mail.

                                S/Jennifer McCoy  
                                Case Manager